Ralph E. Van Landingham and Madalyn Van Landingham v. Commissioner. Lindell K. Jarman and Martha F. Jarman v. Commissioner.
Van Landingham v. Commissioner
Docket Nos. 5402-68, 5403-68.
United States Tax Court
T.C. Memo 1970-139; 1970 Tax Ct. Memo LEXIS 224; 29 T.C.M. (CCH) 614; T.C.M. (RIA) 70139; June 2, 1970, Filed Theodore Tenny, 922 Walnut St., Kansas City, Mo., for the petitioner. David A. Pierce and Rex Guest, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: In these consolidated cases, respondent has determined deficiencies in petitioners' income taxes in the following amounts: Docket No.
Taxable YearEnded
Amount
5402-68
12/31/63
$ 660.53
12/31/65
1,375.50
5403-68
12/31/63
927.45
12/31/64
50.88
12/31/65
1,241.47
*225 Concessions having been made in both dockets, the only remaining issue is whether distributions received by petitioners from a corporation were dividends taxable under section 301 [1] or merely repayments of loans made by them to the corporation. Findings of Fact Some of the facts have been stipulated. The stipulations and exhibits attached thereto are incorporated herein by this reference. Petitioners in docket No. 5402-68 are Ralph E. Van Landingham (hereinafter sometimes referred to as Ralph) and his wife, Madalyn Van Landingham, both residents of Excelsior Springs, Missouri. They filed their joint income tax returns for the years 1963 and 1965 with the district director of internal revenue for the district of Missouri. In docket No. 5403-68, petitioners are Lindell K. Jarman (hereinafter sometimes referred to as Lindell) and his wife, Martha F. Jarman, both residents of Excelsior Springs, Missouri. They filed their joint Federal income tax returns for the years 1963, 1964 and 1965, with the district director of internal revenue for the district of Missouri. During *226 the years 1963 and 1965, Ralph and Madalyn Van Landingham each owned individually 25 percent of the issued capital stock of Prichard Funeral Home, Inc., a Missouri corporation (hereinafter sometimes referred to as Prichard). Also during 1963, 1964 and 1965, Lindell and Martha F. Jarman each owned 25 percent of the issued capital stock of Prichard. Ralph was president and Lindell was vice-president of Prichard. Prichard's earned surplus, as of August 31, 1963, 1964 and 1965, was $16,511.13, $12,874.85, and $24,533.68, respectively. In 1963, Ralph and Lindell each received $119.12 in oil royalty payments which were owed to Prichard. The amounts were charged on the Prichard records as a debit to the ledger account, "Due from Officers," and as a credit to an income ledger account, "Oil Royalties." In the same year both received $200 each from Prichard. These amounts were entered on the books as a debit to the ledger account "Due from Officers," and credited to the corporate checking account. In 1964 Lindell received $42.56, an amount which was debited on the corporate records 615 to "Due from Officers" and credited to an income account, "Interest Income." During 1965, Lindell *227 and Ralph received various other distributions in equal amounts from Prichard in transactions which were reflected on the corporate books. In each instance there was a debit to the ledger account "Due from Officers," and a credit to another account. These distributions to each individually were as follows: (1) payments of $3,250, which were credited to the corporate checking account; (2) transfers to each by Prichard of capital stock of Midwest National Life Insurance, Inc., valued on Prichard's books at $2,400.41 ($1,200.21 to each); (3) transfers by Prichard of capital stock of Mark Kevin Corporation, valued on Prichard's books at $1,100 ($550 to each) (in both stock transfers the ledger account "Investments" was credited); and (4) transfers of a one-half interest to each in certain oil lease investments belonging to Prichard, which investments had an original cost basis totaling $3,493.44, and an adjusted basis on Prichard's books of $1,566.54 (the adjusted basis was credited to the ledger account "Investments"). Finally, both Ralph and Lindell's portion of the credit balance of the ledger account "Due from Officers" was debited in the amount of $190.72 for each with a corresponding *228 credit to the "Pr-Need Liability Account" to correct such account. Respondent determined in his statutory notice of deficiency for each docket, that the above distributions in 1963 and 1964 to Lindell and Ralph were taxable as ordinary income to each of them. For the taxable year 1965, respondent determined that the distributions to each, (minus $3,500, representing in each case a corporate bonus which petitioners reported in their income tax returns), were dividends. Thus, the total distributions determined to be taxable to each petitioner are as follows: *l03*1963
Item
VanLandingham
Jarman
Oil Royalty
$ 119.12
$ 119.12
Cash 200.00
200.00 $ 319.12
$ 319.12 *l02*1964
Item
Interest Income
$ 42.56
1965
Item
VanLandingham
Jarman
Cash
3,250.00
3,250.00
Stock-Midwest National Life Insurance, Inc
1,200.21
1,200.21
Stock - Mark Kevin Corporation
550.00
550.00
Oil Lease Investments (computed at cost)
1,746.72
1,746.72
Total
$6,937.65
$6,937.65
Minus 3,500.00
3,500.00
$3,437.65
$3,437.65
Opinion Petitioners in both dockets received distributions from a corporation in which they had *229 significant stock interests. The only issue for our consideration is whether these distributions were taxable as dividends within the meaning of section 301 [2] and 316. [3] The burden of proof is on petitioners to show that the distributions in the amounts claimed were not dividends. The only witness in these cases was Ralph, who testified on direct examination that the amounts paid by the corporation *230 were in repayment of loans made to Prichard by both petitioners. On cross-examination, he admitted, however, that he had no knowledge as to what was the basis of the alleged debt due to officers shown on Prichard's books but stated that perhaps it was an accounting matter. No evidence was forwarded to disprove that the amounts determined by the respondent were actually distributed to petitioners. Other than the above, the only tangible indication of the existence of any debts due to petitioners is in the corporate income tax returns of Prichard. For the taxable year beginning on September 1, 1962, and ending August 31, 1963, a balance sheet attached to the corporate return indicates an opening and closing deficit under "Asset," "Due from Officers," in the amounts of $6,329.93 616 and $5,691.69. The decreases for that taxable year equaled $638.24, the total of the distributions to Ralph and Lindell in 1963. In the corporate returns for the succeeding two taxable years, there were further reductions in the deficit under "Due from Officers," as indicated on the balance sheets attached to the returns; however, the reduction did not equal the distributions claimed to both petitioners. *231 It is well established that there need be no formal declaration of dividends in order to tax amounts as a dividend, if there is a distribution out of available earnings or profits to shareholders which bestows a benefit upon them. (C.A. 9, 1959), affirming on this issue a Memorandum Opinion of this Court. The evidence in this case is far from establishing that a corporate indebtedness existed or that the distributions in issue were in repayment thereof. In the absence of such evidence, we can only conclude that petitioners are taxable on the amounts distributed in 1963, 1964 and 1965, minus respondent's offsets in 1965, for clearly they received distributions out of earnings and profits, which were a benefit to them. Decisions will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
2. SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General - Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). * * * (c) Amount Taxable. - In the case of a distribution to which subsection (a) applies - (1) Amount Constituting Dividend. - That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. ↩
3. SEC. 316. DIVIDEND DEFINED. (a) General Rule - For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders - (1) out of its earnings and profits accumulated after February 28, 1913 * * *↩